SEATTLE ELECTRIC CO. v. CITY OF SEATTLE et al.

(District Court, W. D. Washington, N. D.    August 15, 1913.)

No. 2,046.

1. CARRIERS (§ 2*)—LEGISLATIVE CONTROL—EFFECT OF LEGISLATIVE ACT.

The Public Service Commission Law (Laws Wash. 1911, c. 117), which expressly applies to street railroads and gives to the commission power to regulate rates, rules, and regulations of carriers subject to the act, deprives the city of Seattle of authority to pass an ordinance requiring street railroads to sell upon their cars commutation tickets.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 4, 5; Dec. Dig. § 2.*]

2. MUNICIPAL CORPORATIONS (§ 732*)—TORTS—EXERCISE OF GOVERNMENTAL POWERS—ENACTMENT OF ORDINANCE.

The adoption by the city of such an ordinance in excess of its powers was an exercise of a governmental power, not a private franchise, and the city is not liable for damages thereby occasioned.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1546; Dec. Dig. § 732.*]

In Equity. Suit for injunction by the Seattle Electric Company against the City of Seattle and others. Injunction granted.

James B. Howe and Hugh A. Tait, both of Seattle, Wash., for plaintiff.

James E. Bradford and Ralph S. Pierce, both of Seattle, Wash., for defendants.

RUDKIN, District Judge. The present bill was filed to enjoin the city of Seattle and certain of its officers from enforcing an ordinance of the city, entitled "An ordinance requiring the sale of street car tickets on street cars in the city of Seattle, limiting the price to be paid therefor, and providing penalties for violation," which became operative on the 30th day of October, 1911.

On the 31st day of March, 1900, the city, by ordinance, granted to the assignors of the plaintiff a franchise to construct and operate a street railway over certain designated streets in the city for the term ending at midnight on the 31st day of December, 1934. The ordinance

granting the franchise contained the following provisions material to our present inquiry:

The grantees, their successors and assigns, may establish and take a passenger toll or fare which shall not exceed the sum of five cents for a single continuous ride one way over any line or lines owned or controlled by the grantees, their successors or assigns, between points situated within the city limits or points on either of the extensions mentioned in section 13 hereof (when constructed or acquired), although a transfer or transfers shall be necessary; but no such transfer shall be good except upon the first connecting car at the point of transfer.

The grantees, their successors and assigns, shall keep on sale for one dollar each, at their main office and power stations within the city, commutation tickets entitling the purchaser to twenty-five rides. Such tickets shall not be transferable nor entitle the owner to a transfer, and the company may make such reasonable regulations in regard to the issue and use of the same as to enforce these provisions.

Numerous other franchises granted to the plaintiff by the city contained similar provisions. The ordinance of October 30, 1911, provides in its first section:

That all persons, companies or corporations owning, controlling or operating street cars in the city of Seattle be and they are hereby required to place on sale in each and every street car owned and operated by them within the city of Seattle street car tickets at a price not exceeding twenty-five (25) for one dollar or six (6) for twenty-five cents.

Section 2 provides a penalty for the violation of the preceding section, and section 4 provides when the ordinance shall take effect. It is the contention of the plaintiff that the latter ordinance impairs the obligation of the contract embodied in the earlier ordinance, in violation of section 10 of article 1 of the Constitution of the United States, and deprives it of its property without due process of law, and denies to it the equal protection of the laws, in violation of the fourteenth amendment to the Constitution of the United States.

[1] In view of the conclusion I have reached as to the validity of the ordinance of October 30, 1911, upon other grounds, I deem it unnecessary to consider or determine whether the earlier ordinance constituted a contract between the city and the street railway company within the meaning of the Constitution, or whether the later ordinance impairs the obligation of that contract, if one existed. I see no escape from the conclusion that the act of the Legislature of this state, approved March 18, 1911, commonly known as the "Public Service Commission Law" (Laws of 1911, c. 117), took away and superseded the power of municipalities to enact ordinances such as the one here in question. The act referred to is most comprehensive in its terms and extends the power of the Public Service Commission to nearly all the public utilities in the state.

Thus section 8 defines the terms "street railroad," "street railroad company," "common carrier," and "public service companies," and the terms "common carrier" and "public service companies," as there defined, include street railroads and street railroad companies. Section 9 provides that all charges made for any service rendered or to be rendered in the transportation of persons or property by any *common carrier* shall be just, fair, reasonable, and sufficient; that every *com-*

*mon carrier* shall construct, furnish, maintain, and provide safe, adequate, and sufficient service facilities, trackage, sidings, railroad connections, industrial and commercial spurs, or equipment to enable it to promptly, expeditiously, safely, and properly receive, transport, and deliver all persons or property offered to or received by it for transportation, and to promote the safety, health, comfort, and convenience of its patrons, employés, and the public, and that all rules and regulations issued by any *common carrier* affecting or pertaining to the transportation of persons or property shall be just and reasonable. Section 14 provides that every *common carrier* shall file with the commission, and shall print and keep open to public inspection, schedules showing the rates, fares, charges, and classification for the transportation of persons and property within the state between each point upon its route and all other points thereon. Section 15 provides that, unless the commission otherwise orders, no change shall be made in any classification, rate, fare, charge, rule, or regulation which shall have been filed and published by a *common carrier* in compliance with the preceding section except after 30 days' notice to the commission and to the public: Provided, the commission for good cause shown may by order allow changes in rates without requiring such notice. Section 18 provides that no *common carrier* shall charge, demand, collect, or receive a greater or less or different compensation for transportation of persons or property, or for any service in connection therewith, than the rates, fares, and charges applicable to such transportation as specified in its schedule filed and in effect at the time. Section 25 provides that no street railroad company shall charge, demand, or collect more than five cents for one continuous ride within the corporate limits of any city or town, and shall furnish transfers entitling passengers to one continuous trip over and upon portions of its lines within the same city or town not reached by the originating car. Section 53 provides that whenever the commission shall find, after a hearing had, upon its own motion or upon complaint, that the rates, fares, or charges demanded, exacted, charged, or collected by any *common carrier* for the transportation of persons or property within the state or in connection therewith, or that the regulations or practices of such common carrier affecting such rates are unjust, unreasonable, unjustly discriminatory, or unduly preferential, or in any wise in violation of the provisions of law, or that such rates, fares, or charges are insufficient to yield a reasonable compensation for the services rendered, the commission shall determine the just, reasonable, or sufficient rates, fares, or charges, regulations, or practices to be thereafter observed and enforced, and shall fix the same by order as hereinafter provided. Section 64 provides that the commission may, on its own motion or upon complaint, order repairs or changes in equipment. Section 65 provides for the investigation of equipment and appliances by the commission. Section 66 declares that every street car shall be equipped with proper and efficient brakes, steps, grabirons, or handrails, fenders or aprons, or pilots, and with such other appliances, apparatus, and machinery necessary for the safe operation of such street car, as the commission may prescribe. Section 67 provides for the inspection of safety appliances on street cars. Section 69 provides that all street railroads operating

in this state shall cause their trains and cars to come to a full stop at a distance not greater than 500 feet before crossing the tracks of another railroad at grades, except at crossings where there are established signal towers and signalmen, interlocking plants, or gates. Section 80 provides that complaint may be made by the commission of its own motion, or by any person or corporation, Chamber of Commerce, Board of Trade, or any commercial, mercantile, agricultural, or manufacturing society, or any *body politic* or *municipal corporation,* by petition or complaint in writing, setting forth any act or thing done or omitted to be done by any *public service corporation* in violation, or claimed to be in violation, of law, or of any order or rule of the commission. Section 92 provides for the valuation of street railway property and the ascertainment of its probable earning capacity. Section 94 provides that every *public service company* and all officers, agents, and employés of any *public service company* shall obey and comply with every order, rule, direction, or requirement made by the commission under the authority of the act so long as the same shall remain in force, and provides a penalty for violation thereof. Section 99 provides that all orders and rules of the commission shall be conclusive, unless set aside or annulled in a review as in the act provided. Section 101 provides that it shall be the duty of the commission to enforce the provisions of the act, and all other acts of the state, affecting public service companies, the enforcement of which is not *specifically* vested in some other officer or tribunal.

These several provisions and others that might be cited are in my opinion utterly inconsistent with the existence in one of the municipalities of the state of the power to enact an ordinance such as the one in question. In discussing the effect of a similar act on municipal charter provisions in California-Oregon Power Co. v. City of Grants Pass (D. C.) 203 Fed. 173, Judge Bean said:

"It thus appears that the purpose of the Legislature in adopting the law and the people in approving it was to provide a uniform system throughout the state for the control and regulation of public matters, and fixing the rates to be charged by them, and to create a tribunal for that purpose. By that act the power to fix the rates to be charged by public service corporations conferred on the different cities of the state by their charters is transferred to the Railroad Commission, and such charter provisions are therefore amended or superseded as far as they are in conflict or inconsistent with the powers so conferred. * * * When a public utility has filed its schedule of rates, as required by law, such schedule fixes the only rates which it may lawfully charge or collect until they are changed in the manner provided by law. If it does charge or receive any greater or less compensation, it is liable under the public utility law to a forfeiture for each offense, and its agent or officer offending to a fine. It follows, therefore, that after such schedule has been filed the power of a municipal corporation to change or modify the rates therein stated no longer exists, because it is inconsistent with the provisions of the Utility Act and the obligations and liabilities of public service corporations thereunder. If the rates stated in the schedule filed by the plaintiff company are unreasonable or unjust, the city has a remedy by the proper proceedings before the commission; but it cannot prescribe other rates by ordinance and punish the plaintiff or its officers for a failure to observe them."

If the plaintiff in this case obeys the ordinance in question, it violates the law of the state, because the charges made are less than those

fixed by the schedule on file; and if it obeys the law of the state, it violates the city ordinance. Such a conflict of authority is not to be tolerated. For these reasons I am satisfied that the act of the municipality in enacting the ordinance in question was ultra vires, and that the ordinance itself is null and void. The injunction must therefore issue as prayed.

[2] The plaintiff further contends that it has been damaged in the sum of $5,000 per month since the commencement of this suit by reason of the fact that it has been compelled to sell commutation tickets at the reduced rates fixed by the ordinance, and it claims damages on that basis. Waiving the question whether these damages have been proved by competent evidence, I am clearly of opinion that they are not recoverable, either at law or in equity. Municipal corporations are created by the state for political objects, and are invested with certain governmental powers, to be exercised for local purposes and for the public good. As said by Judge Dillon:

"They possess, according to many courts, a double character—the one governmental, legislative or public; the other, in a sense, proprietary or private. The distinction between them, though sometimes difficult to trace, is highly important, and is frequently referred to, particularly in the cases relating to the implied or common-law liability of municipal corporations for the negligence of their servants, agents, or officers in the execution of corporate duties and powers. On this distinction, indeed, rests the doctrine of such implied liability. In its governmental or public character, the corporation is made by the state one of its instruments, or the local depositary of certain limited and prescribed political powers, to be exercised for the public good on behalf of the state, and for itself." Dillon on Mun. Cor. 39.

And for acts done by them in their public or governmental capacity, and in discharge of the duties imposed upon them for the public good, they partake of the state's immunity from suit and incur no liability to persons who may be affected or injured by their acts. In Fowle v. Alexandria, 3 Pet. 398, 409, 7 L. Ed. 719, Chief Justice Marshall said:

"Is a municipal corporation, established for the general purposes of government, with limited legislative powers, liable for losses consequent on its having misconstrued the extent of its powers, in granting a license which it had not authority to grant, without taking that security for the conduct of the person obtaining the license, which its own ordinances had been supposed to require, and which might protect those who transacted business with the person acting under the license? We find no case in which this principle has been affirmed. That corporations are bound by their contracts is admitted; that moneyed corporations, or those carrying on business for themselves, are liable for torts, is well settled; but that a legislative corporation, established as a part of the government of the country, is liable for losses sustained by a nonfeasance, by an omission of the corporate body to observe a law of its own, in which no penalty is provided, is a principle for which we can find no precedent. We are not prepared to make one in this case."

In Trescott v. City of Waterloo (C. C.) 26 Fed. 592, the court said:

"Again, the action of the city in adopting the ordinance in question was, upon its part, a legislative act, and the exercise of a right of sovereignty primarily belonging to the state, but by the state delegated to the city. For errors of judgment in the exercise of such powers the cities are not liable in their corporate capacity."

In Commissioners v. Duckett, 20 Md. 476, 83 Am. Dec. 557, the court said:

"With regard to the liability of a public municipal corporation for the acts of its officers, the distinction is between an exercise of those legislative powers which it holds for public purposes, and as part of the government of the country, and those private franchises which belong to it as a creation of the law. Within the sphere of the former it enjoys the exemption of the government from responsibilities for its own acts and for the acts of those who are independent corporate officers, deriving their rights and duties from the sovereign power."

See also, Trammell v. Town of Russellville, 34 Ark. 105, 36 Am. Rep. 1; 28 Cyc. 1262.

The distinction between governmental powers and mere private franchises has often been recognized by the courts of this state, and the nonliability of municipalities for acts committed in the exercise of the former has been asserted in the most positive terms. Lawson v. Seattle, 6 Wash. 184, 33 Pac. 347; Simpson v. Whatcom, 33 Wash. 392, 74 Pac. 577, 63 L. R. A. 815, 99 Am. St. Rep. 951; Lynch v. North Yakima, 37 Wash. 657, 80 Pac. 79, 12 L. R. A. (N. S.) 261; Cunningham v. Seattle, 40 Wash. 59, 82 Pac. 143, 4 L. R. A. (N. S.) 629; s. c., 42 Wash. 134, 84 Pac. 641, 4 L. R. A. (N. S.) 629, 7 Ann. Cas. 805. If a municipality ever acts in a purely governmental capacity, it would seem to so act in the passage of an ordinance of this kind in relation to a subject in which the general public is alone concerned, and in which it has no private or proprietary interest.

For the foregoing reasons, the claim for damages is disallowed, and a permanent injunction will be granted according to the prayer of the complaint, with costs to the plaintiff. Let a decree be entered accordingly. I have delayed a decision in this case for some time, in the hope that the Supreme Court of the state might determine the effect of the Public Service Commission Law on pre-existing legislation and charter provisions in a case now pending before it, but in justice to the litigants before the court I do not feel warranted in withholding my decision longer. Either party may, however, file a petition for a rehearing within 30 days after final decree, if so advised, in order to retain jurisdiction in this court until the Supreme Court reaches a decision. Such petition will not stay or supersede the injunction now granted.