[No. 14706.  *En Banc.*  April 27, 1918.]

# The State of Washington, *on the Relation of Tacoma Railway & Power Company, Plaintiff,* v. Public Service Commission *et al., Respondents.*[1]

Street Railroads—Regulation by Public Service Commission—Appeal—Review. The findings of the public service commission upon hearing a contest over street railway rates must be taken as true on appeal, where the evidence is not brought up.

Same—Regulation by Public Service Commission — Franchise Conditions—Abrogation—Power of Commission—Statutes. Under Rem. Code, § 8626-53 of the public service commission law, which provides that the public service commission may determine and regulate just and reasonable rates, facilities, and service where the same is unjust or unreasonable or the fares or charges insufficient to yield a reasonable compensation for the service rendered, and may fix the same by order, does not authorize the public service commission to relieve from or abrogate provisions of a street railway franchise imposed by the city prior to the adoption of the public service law, and requiring the company to pave between its tracks, contribute to the cost of bridges and pay a ·percentage of ·its gross receipts, and carry city employees free, under Rem. Code, § 7507, vesting the city with the whole of the state's police power as to the use and control of its streets; notwithstanding the commission finds that the service is inadequate and the income of the company not sufficient to ·pay a reasonable return on the property devoted to the public use; since the public service commission law does not expressly or by necessary implication confer power to deal with the question of franchises or to modify conditions previously imposed, and such intention is not indicated by the language of the act, or the history of the legislation, which shows a rejection of a proposed law granting such power.

Carriers — Street Car Fare — Regulation by Public Service Commission—Statutes. Under the public service commission law, which provides (Rem. Code, § 8626-9) that fares shall be just, fair, reasonable and sufficient, and that every common carrier shall provide "adequate and sufficient service" and (Id., § 8626-53) that the public service commission shall have power to regulate fares and service, and determine and order the same where if unjust or unreasonable or the fares or charges are insufficient to yield a reasonable compensation for the service rendered, and (Id., § 8626-25) that no street railroad company shall charge or collect more than five cents for one continuous ride within the corporate limits, the public serv-

[1] Reported in 172 Pac. 890.

ice commission has no power to increase the fare which a street railway company may charge within city limits to more than five cents, although that sum is found insufficient to pay a reasonable return on the property devoted to the public service and provide an adequate and sufficient service; since to harmonize the various provisions of the act, it must be construed as intending to give power to regulate rates so long only as it does not exceed the limit of five cents expressly fixed by § 8626-25 of the act.

Application filed in the supreme court March 5, 1918, for a writ of mandamus to compel the public service commission to exercise jurisdiction looking to the relief of plaintiff-from certain street railway franchise provisions and increasing the rates charged for the carriage of passengers. Denied.

*James B. Howe* and *F. D. Oakley,* for relator.

*Lyle & Henderson,* for respondent Blaine.

*Fitch, Jacobs & Arntson,* for interveners Bloomberg *et al.*

*The Attorney General* and *Hance H. Cleland, Assistant,* and *U. E. Harmon, Frank M. Carnahan, J. M. Geraghty, D. W. Featherkile,* and *Hugh M. Caldwell, amici curiae.*

MAIN, J.—This is an original application in this court for a writ of mandate directed to the public service commission. The petitioner, the Tacoma Railway & Power Company, is a corporation, and is now, and has been for a number of years last past, engaged in operating a street railway system in the city of Tacoma under certain franchises granted by that city. In May, 1917, J. E. Bloomberg and others filed a complaint with the public service commission claiming that the service given by the street car company upon certain streets was inadequate and not sufficient, and asking that the company be required to give an adequate and sufficient service. This complaint was answered by the company and a hearing was had before the commission. After

the hearing, the commission found that the service complained of was inadequate and insufficient, but declined to order that the service be improved, because the income of the company was not sufficient to pay a reasonable return on the value of the property devoted to the public service unless the company could be relieved of certain franchise provisions or be permitted to charge a fare of more than five cents for one continuous ride within the corporate limits of the city. The majority of the commission was of the opinion that it had no power either to relieve from the franchise provisions complained of or to authorize a fare of more than five cents per passenger within the corporate limits of the city. The commission thereupon declined to order an adequate and sufficient service and dismissed the cause. For the purposes of this case, findings of the commission must be accepted as true, since the evidence upon which the findings are based is not before us.

Whether the writ prayed for should be issued depends upon whether the public service commission, under the authority conferred upon it by the public service commission law, has the right to relieve from franchise provisions or direct that a fare greater than five cents may be charged. If it has such power, the action of the commission in dismissing the complaint for want of jurisdiction was erroneous, and the writ prayed for should issue. If the commission has not been given power by the public service commission law to either modify franchise provisions or increase the fare to more than five cents, the writ prayed for should be denied. The franchise provisions complained of are those requiring the street car company, the petitioner, to pave between its tracks and one foot on either side, to contribute to the cost of bridges, to pay a certain percentage of its gross earnings to the city, and to

permit certain officers or employees of the city free transportation. The franchises containing these provisions were all granted prior to the passage of the public service commission law.

The first question is whether the public service commission is authorized by the statute to relieve from the franchise provisions complained of when the income of the company is not sufficient to pay a reasonable return upon the value of the property devoted to the public service and provide an adequate and sufficient service. In 1890, the legislature passed what is commonly called the enabling act, relating to cities. Section 5, subd. 9, of this act (Laws 1890, p. 218), Rem. Code, § 7507, contains the following grant of power:

"To authorize or prohibit the locating and constructing of any railroad or street railroad in any street, alley, or public place in such city, and to prescribe the terms and conditions upon which any such railroad or street railroad shall be located or constructed; . . ."

In pursuance of the authority granted by this section, the city of Tacoma granted franchises and placed the conditions therein above referred to. With these conditions, the franchises were accepted.

As we understand the argument, it is not claimed that these franchise provisions are illegal or void, or that the city did not have the power to impose such conditions when it granted the franchises. It is claimed, however, that, this being a matter within the police power, the state had a right, in the exercise of that power by a subsequent statute, to confer upon the public service commission the right to abrogate franchise provisions, and did, in fact, in the public service commission law, confer that power upon the public service commission. It will be noted that the section of the statute quoted expressly empowers cities of the first class to regulate and control the use of its streets and

to authorize or prohibit the use of its streets, and to prescribe the "terms and conditions upon which any such railroad or street railroad shall be located or constructed." Here is a clear and specific grant by the state to the city to impose terms and conditions upon which any of its streets may be used by a street railroad. In *Tacoma R. & Power Co. v Tacoma,* 79 Wash. 508, 140 Pac. 565, it was held that, by this statute, the legislature intended to, and did, vest the city with the whole of the state's police power touching the subject-matter, the subject-matter being the right to impose terms and conditions upon a railroad or street railroad as a condition precedent to the location or construction of any such railroad or street railroad upon a city street or streets. It was there said:

"The statute quoted, Rem. & Bal. Code, § 7507, subd. 7, expressly empowers cities of the first class to regulate and control the use of streets, and to 'authorize or prohibit' the use of electricity at, in, or upon any of the streets, 'and to prescribe the terms and conditions upon which the same may be used, and to regulate the use thereof.' Broader language could hardly be used. It is obvious that the legislature intended to, and did, vest the city with the whole of the state's police power touching the subject-matter." [Citing authorities.]

To the same effect, see *State ex rel. Tacoma v. Sunset Tel. & Tel. Co.,* 86 Wash. 309, 150 Pac. 427, L. R. A. 1917F 1178.

In *Cleveland v. Cleveland City R. Co.,* 194 U. S. 517, the court had occasion to construe a section of the revised statutes of the state of Ohio which authorized cities "to fix the terms and conditions upon which such railways may be constructed, operated, extended and consolidated," and it was there held that this statute was an express authorization to the city to impose conditions when granting a franchise.

The question then arises whether the public service commission law, either by its terms or by necessary implication, attempted to confer power upon the public service commission to modify or abrogate franchise provisions which had previously been imposed by the city when granting the franchises under the express authorization of the legislature. Section 53 of the public service commission law, page 571, ch. 117, Laws of 1911, is as follows:

"Whenever the commission shall find, after a hearing had upon its own motion or upon complaint, as herein provided, that the rates, fares or charges demanded, exacted, charged or collected by any common carrier for the transportation of persons or property within the state or in connection therewith, or that the regulations or practices of such common carrier affecting such rates are unjust, unreasonable, unjustly discriminatory, or unduly preferential, or in any wise in violation of the provisions of law, or that such rates, fares or charges are insufficient to yield a reasonable compensation for the service rendered, the commission shall determine the just, reasonable or sufficient rates, fares or charges, regulations or practices to be thereafter observed and enforced and shall fix the same by order as hereinafter provided.

"Whenever the commission shall find, after such hearing, that the rules, regulations, practices, equipment, appliances, facilities or service of any such common carrier in respect to the transportation of persons or property are unjust, unreasonable, unsafe, improper, inadequate or insufficient, the commission shall determine the just, reasonable, safe, adequate sufficient and proper rules, regulations, practices, equipment, appliances, facilities or service to be observed, furnished, constructed or enforced and be used in the transportation of persons and property by such common carrier, and fix the same by its order or rule as hereinafter provided." Rem. Code, § 8626-53.

If the law confers power upon the commission to modify or abrogate franchise provisions, it must be

found in this section. A critical examination of the language used will disclose that there is there conferred upon the commission the power to deal with the questions of safety, efficiency, rates and quality of service. In other words, speaking generally, the statute confers upon the commission power to deal with the subject of rates and service. There is nothing in this section which either expressly or by necessary implication confers power upon the public service commission to deal with the question of franchises or to modify any of the terms or conditions that may have previously been imposed therein. The law will be searched in vain for any provision which confers such power upon the commission. The right to deal with the question of rates and service is an entirely different matter from the right to grant franchises or abrogate the provisions thereof. The franchises in question having been granted under the clear and express authority of the statute enacted long prior to the public service commission law, it seems plain that it was not the intent of the latter law to grant power to the commission to abrogate franchise provisions. Had the legislature desired to confer this power upon the commission it would have been easy to have said so in such language as would have made the intent plain. The history of the legislation, however, is such as to indicate an affirmative intention on the part of the legislature not to confer such power upon the public service commission.

The first bill introduced in the legislature in 1911 for the purpose of extending the scope of the previous railroad commission law was Senate Bill No. 102. This contained a provision which conferred upon the commission:

"Power and authority to grant, modify, revoke, and generally regulate the terms and provisions of such permit, license or franchise. . . ."

Neither this provision nor any similar provision appears in the law which was enacted by the legislature and which is known as the public service commission law above referred to. Had the legislature intended that the commission should have power to deal with franchises in cities or abrogate provisions of franchises which had previously been amended by the cities, there certainly would have been embodied in the law as passed some provision relating to that subject-matter. As already stated, the subject-matter of granting franchises and imposing conditions therein and the subject-matter of rates and service are entirely different. Whether the legislature has the power to confer upon the public service commission the right to abrogate the conditions in franchises to street railroad companies which had been granted prior to the passage of the public service commission law is a question not before us at this time, and we neither express nor intimate any opinion thereon.

The other question to be determined upon this application is: Does the public service commission have the power to increase the fare which the petitioner may charge within the city limits of Tacoma to more than five cents, since, as found by the commission, the income of the petitioner is not sufficient to pay a reasonable return upon the value of the property devoted to the public service and provide an adequate and sufficient service? This question, like the one previously considered, involves a consideration of the power conferred upon the commission by the public service commission law. In the Laws of 1905, ch. 81, p. 145, the legislature passed what was known as the railroad commission act. This law applied to railroads and express companies. It did not include street railroad companies. In 1907, the legislature passed an act (ch. 226, Laws of 1907, p. 536) amending the previ-

ous act relating to railroads and express companies. By this amended act, street railroad companies were not included within its provisions. In 1911, the legislature passed what is known as the public service commission law (ch. 117, Laws of 1911, p. 538; Rem. Code, § 8626-1 *et seq.*), This law was much more comprehensive than the previous statute, and brought within its provisions public utilities which had not been included within the earlier enactments, among them, street railroad companies. Section 9 (p. 546, Id., §8626-9) of this later act provides, among other things, that all charges for any service rendered in the transportation of persons or property by any common carrier "shall be just, fair, reasonable and sufficient," and also that every common carrier shall construct, furnish, maintain and provide safe, "adequate and sufficient service" to enable it to expeditiously and safely transport all persons offered or received by it for transportation. Section 25 (p. 558) of the act is as follows:

"No street railroad company shall charge, demand or collect more than five cents for one continuous ride within the corporate limits of any city or town. . . ." Rem. Code, § 8626-25.

As already pointed out, § 53, above quoted, is the one which confers power upon the commission to regulate service and rates.

Section 112 (p. 612, Id., § 8626-112), which is the last section of the act, provides that, in so far as it embraces the same subject-matter, the act shall be construed as a continuation of chapter 81 of the Laws of 1905 (the railroad commission law) and the acts amendatory thereof and supplemental thereto.

The petitioner contends that, since its income is not sufficient to pay a reasonable return upon the value of the property used in the public service and furnish

an adequate and sufficient service, the commission has the power under § 53 to increase the rate to more than five cents, even though that limitation is provided in § 25 of the statute itself, a portion of which is above quoted. It is a familiar canon of construction that the different sections or provisions of the same statute should be so construed as to harmonize and give effect to each; but if there is an irreconcilable conflict, the subsequent one prevails. The argument here is that there is an irreconcilable conflict between § 25, which limits the fare to five cents, and § 53, which confers upon the commission power to deal with the question of rates and service. If § 53 abrogates § 25 of the same act it must be by implication only, as it is not expressly so done. It is also a well-settled rule of construction that repeals by implication are not favored. It is true, by § 9 of the act, there is imposed upon the carrier the duty to provide adequate and sufficient service. The various sections referred to should be harmonized, if possible, rather than holding that one section of the act was intended to repeal by implication a prior section. It is a matter of common knowledge that, at least up to the time this statute was passed, the economic judgment of society was that the maximum fare to be charged by a street railroad company for one continuous ride within the corporate limits of a city was five cents. It is also a fact generally known, but possibly one of which the court would not be justified in taking judicial knowledge, that most all street railroad franchises contain such a limitation.

When the act of 1911 was passed, as already stated, street railroad companies had not been subject to regulation by the laws passed prior to that time. That act extended the previous railroad commission act to include street railroad companies and other public utilities, and at the same time embodied in § 25 an express

mandate of the legislature that no street railroad company should charge, demand or collect more than five cents for one continuous ride within the corporate limits of any city or town. It was evidently not the thought of the legislature that, by § 53, there was conferred upon the public service commission power to abrogate this express declaration. The commission undoubtedly has the power to regulate rates, so long as it does not exceed the limit of five cents, and to require an adequate and sufficient service within this limitation, having due regard to the right of the company to earn a reasonable return upon the value of the property devoted to the public use. Giving the statute such a construction harmonizes its various provisions and, as we think, declares the plain intent of the legislature.

The case of *State ex rel. Great Northern R. Co. v. Railroad Commission*, 52 Wash. 33, 100 Pac. 184, does not authorize or direct a different conclusion. In that case it was held that the maximum rate acts passed by the legislatures of 1893 and 1897 were repealed by necessary implication by the subsequent railroad commission act passed in 1905 and the amendatory act of 1907. There the court was evidently of the opinion that the later act superseded all prior acts on the matter in hand and comprised the sole system of legislation on the subject of rates. But the situation as it appeared in that case is not the same as in the present case. Here, as has been pointed out, when the street railroads were first made subject to the jurisdiction of the public service commission, there was an express provision in the same act which provided that no street railroad company should charge more than five cents. It cannot, therefore, be held that it was the intention of the legislature, by continuing in § 53 substantially the same provisions that had been embodied in the prior law

relating to railroad and express companies and making such provisions applicable to all public utilities brought within the provisions of the law, to thereby grant to the public service commission the right to fix a rate in excess of five cents and disregard the provision in § 25 limiting the rate to that sum. The Missouri cases— *State ex rel. Missouri Southern R. Co. v. Public Service Commission,* 259 Mo. 704, 168 S. W. 1156; and *State ex rel. Rhodes v. Public Service Commission,* 270 Mo. 547, 194 S. W. 287—are, in their facts, substantially like the case of *State ex rel. Great Northern R. Co. v. Railroad Commission, supra.*

The case of *People ex rel. Ulster & D. R. Co. v. Public Service Commission,* 156 N. Y. Supp. 1065; *Id.,* 112 N. E. 1071, is also distinguishable. In the state of New York there was what was known as the railroad law, and also the public service commission law. These were each revised and amended by the legislature in 1910, the railroad law declaring that the power of railroad corporations was subject to the limitations and requirements of the public service commission law. The section of the law relating to the question of rates of fare was also made subject to the provisions of the public service commission law. While the court in that case considered the railroad law and the public service commission law as one, and held that the public service commission was not bound by the maximum rates fixed in the railroad law, the provisions referred to in the railroad law making it subject to the provisions of the public service commission law do not make the case applicable to the facts here presented. Had the legislature of this state intended that the public service commission might authorize the charge by a street railroad company of a greater fare than five cents it would have been easy, when fixing the five-cent maximum, as it appears in § 25, to have added the provision

that a greater rate might be charged when authorized by the commission upon a proper showing of the necessity therefor.   This is substantially what the New York statute does.

It is there expressly provided, in § 53 of the amendatory act of 1911, that, whenever the commission shall be of the opinion that the maximum rates collected or charged are insufficient to yield reasonable compensation for the service rendered and are unjust and unreasonable, the commission shall determine and prescribe the reasonable and just rates to be thereafter observed and enforced as the maximum to be charged.

It is doubtless true that the public service commission law is remedial legislation and should be given a liberal construction for the purpose of carrying out the will of the legislature, as was pointed out in *State ex rel. Railroad Commission v. Great Northern R. Co.*, 68 Wash. 257, 123 Pac. 8, but the rule authorizing a liberal construction does not mean that the court shall write conditions or provisos into the statute where the legislature has placed none, or write out of the act a section which the legislature has placed there, when the various sections of the statute are not in irreconcilable conflict and may be harmonized.   If, as found by the commission, the revenue of the petitioner based upon a five-cent fare is not sufficient to provide an adequate and sufficient service and at the same time afford a reasonable and proper income to the petitioner, the remedy is with the legislative branch of the government and not with the court.   It is the duty of the court to construe the law as it finds it.

The writ will be denied.

ELLIS, C. J., MOUNT, PARKER, FULLERTON, HOLCOMB, WEBSTER, and CHADWICK, JJ., concur.