[No. 18414. Department Two. July 11, 1924.]

## MONROE WATER COMPANY, *Respondent*, v. TOWN OF MONROE, *Appellant*.[1]

WATERS (83)—PUBLIC SUPPLY—RATES—POWERS OF DEPARTMENT OF PUBLIC WORKS—TERMINATION OF FRANCHISE CONTRACTS. Rem. Comp. Stat., § 10370, providing that the department of public works may require the termination of the "contracts" of a water company, covers all contracts without exception, and hence embraces a franchise contract to furnish free water to the city.

SAME (83). By Rem. Comp. Stat., § 10390, the legislature intended to vest in the department of public works the power to prescribe rates and charges where the rates charged are unjust, unreasonable or inadequate, without regard to whether the franchise did or did not fix the rates; and this applies to franchise water rates to be paid by the city, as well as to consumer's rates.

Appeal from a judgment of the superior court for Snohomish county, Bell, J., entered May 7, 1923, in favor of the plaintiff, in an action to recover water charges, tried to the court upon an agreed statement of facts. Affirmed.

*Cooley, Horan & Mulvihill,* for appellant.

*Robert M. Jones,* for respondent.

FULLERTON, J.—On June 24, 1914, the town of Monroe, a municipal corporation of the fourth class, granted to the Monroe Water Company, a corporation, a franchise authorizing it for a period of thirty years to supply the town and the inhabitants thereof

[1]Reported in 227 Pac. 516.

with water. The grant was by ordinance, in which the terms and conditions of the grant were prescribed with some minuteness of detail. Among these conditions were the following:

"Section 9. That in consideration of the rights, privileges and franchises granted by this Ordinance the grantee or its successors agree to furnish during the life time of such franchise to said Town of Monroe, free water for the extinguishment of fires along the line of its distribution system, free hydrant rental for all hydrants now or hereafter placed or connected with said water system; free water for street flushing on paved streets, to be used from vehicles; free water for parking strips in paved streets, and free water for drinking fountains for man and beast, and to maintain its plant, pumping and distribution system in suitable condition to perform such service.

"Section 13. That the rates to be charged by the grantee or its successors to consumers of water furnished by it shall be reasonable and not in excess of the rates usually and ordinarily charged in towns or cities of the like class to the Town of Monroe in the State of Washington; provided, that the rates to consumers for a residence occupied by one family shall not exceed one dollar per month, and in such houses for bath and water closet, shall not exceed 25 cents each per month; and provided that the rates hereafter to be charged shall not be greater than those now charged, and the grantee shall file a copy of the present rates charged to consumers in the Town of Monroe with the Town Clerk at the time he files his acceptance of this Ordinance."

The franchise was granted subsequent to the enactment of the statute known as the public service commission law. Rem. Comp. Stat., §§ 10339-10459 [P. C. §§ 5528-5637]. Pursuant to the requirements of that act (Ib., § 10363) [P. C. § 5554], the water company filed with the commission created by the act its schedule of rates and charges to be made to the consumers of water furnished; the rates and charges being in sub-

stantial compliance with the rates and charges fixed in its franchise. These rates continued in force until sometime in the latter part of the year 1920, when a new schedule was filed with the department of public works, the successor of the commission, substantially increasing the rates theretofore charged to the private consumers. This schedule was permitted to go into effect automatically, but on complaint made later to the department the schedule was confirmed, the department entering at the same time an order canceling and annulling the franchise provisions relating to rates in so far as they affected private consumers. Of this order, the town of Monroe made complaint to the department and a rehearing of the entire matter of rates was granted by that body. At the conclusion of this hearing, the department cancelled and annulled all of the franchise provisions with respect to water rates, and entered a new order relating thereto. Among the changes made was one requiring a minimum charge of $1,000 per year, payable in monthly instalments, for water supplied to the first thirty hydrants in use by the town, and $24 per year, payable in a like manner, for each additional hydrant.

The town took no proceedings looking to a review of the order, but subsequently refused to make the payments therein required. The water company thereupon brought the present action for the past due payments. Judgment went in its favor in the court below and the town appeals.

The learned counsel representing the appellant concede that, since the town did not seek a review of the departmental order, there is but one question open to it, namely, the question of the power of the department of public works to make an order changing the rates and charges prescribed in the franchise under which a

12—130 WASH.

public utility operates. On this question they make two contentions; first, that the legislature has not attempted to vest in the department the power; and second, that, if it has so attempted, it is beyond its constitutional powers so to do.

With regard to the first of the contentions, the applicable provisions of the statute are the following:

"Section 10370. Nothing in this act shall be construed to prevent any . . . water company from continuing to furnish its product . . . under any contract or contracts in force at the date this act takes effect, or upon the taking effect of any schedule or schedules of rates subsequently filed with the commission, as herein provided, at the rates fixed in such contract or contracts; Provided, that the commission shall have power, in its discretion, to direct by order that such contract or contracts shall be terminated by the company party thereto, and thereupon such contract or contracts shall be terminated by such company as and when directed by such order . . ." [Rem. Comp. Stat., § 10370.]

"Section 10390. Whenever the commission shall find, after a hearing had upon its own motion, or upon complaint as herein provided, that the rates or charges demanded, exacted, charged or collected by any . . . water company, for . . . water, or in connection therewith, or that the rules, regulations, practices or contracts affecting such rates or charges are unjust, unreasonable, unjustly discriminatory or unduly preferential, or in any wise in violation of the provisions of the law, or that such rates or charges are insufficient to yield a reasonable compensation for the service rendered, the commission shall determine the just, reasonable, or sufficient rates, charges, regulations, practices or contracts to be thereafter observed and in force, and shall fix the same by order as hereinafter provided. . . .

"Whenever the commission shall find, after hearing, that any rules, regulations, measurements, or the standard thereof, practices, acts or services of any such . . . water company are unjust, unreason-

able, improper, insufficient, inefficient or inadequate, or that any service which may be reasonably demanded is not furnished, the commission shall fix the reasonable rules, regulations, measurements or the standard thereof, practices, acts or service to be thereafter furnished, imposed, observed and followed, and shall fix the same by order, or rule, as hereinafter provided.'' [Rem. Comp. Stat., § 10390.]

The first of these provisions, it will be noticed, relates to contracts of a water company for furnishing water, and expressly empowers the department to direct a termination of such contracts, and provides that, when it is so directed, the contracts ''shall be terminated as and when directed.'' No distinction is made with regard to the nature of the contract, or to the consideration for its execution, whether by franchise or otherwise. No contracts being excepted, it is a necessary conclusion that all are included. The second of the provisions relates to rates charged for the services rendered. The department is empowered to inquire into these, and is directed to prescribe rates whenever it finds that the prescribed rates and charges are ''unjust, unreasonable, improper, insufficient, inefficient or inadequate.'' Here again, there are no exceptions or limitations upon the power. Plainly, we conclude, the legislature intended to vest in the department absolute dominion over contracts and rates of public service utilities, without regard to the question whether the franchise did or did not fix such rates.

The question involved in the second of the contentions, we think, has been met and determined contrary to the town's contention in the cases of *State ex rel. Webster v. Superior Court,* 67 Wash. 37, 120 Pac. 861; *State ex rel. Seattle v. Public Service Comm.,* 103 Wash. 72, 173 Pac. 737; and *State ex rel. Spokane v. Kuykendall,* 119 Wash. 107, 205 Pac. 3. In these cases, the question was exhaustively examined and the

holding made that the legislature could constitutionally vest in the department of public works power to regulate the rates to be charged for the services of a public utility, even though the rates were fixed by the franchise under which the utility operates.

There is, however, a distinction between the facts of the cited cases and the facts presented here, in that the cited cases refer to provisions in the franchises relating to charges *for services rendered to private persons,* while here the franchise rates relate to services rendered to the municipality by whom the franchise was granted. But we cannot think this distinction should make a difference in the rule. It is the purpose of the statute to grant to a public service corporation a fair return and no more upon the property it employs in the public service it renders, and it is its further purpose to divide the cost of making up this return equably and ratably among the users of the service. It needs no argument, of course, to show that if indulgences and privileges are granted to one class of users, lessening the cost of the use to them, the difference must be made up by increasing the cost to other classes of users. Some very radical reason must be found to exist before such a condition should be permitted to obtain, and we cannot think it is found in the circumstances that one is a private consumer and the other the representative of the public at large. The users and non-users of the utility residing within the municipality are equally benefited by the use made of the utility for the public at large, and it is only equal justice that the cost of the use should be borne generally by all of them, as other municipal expenses are borne, and not charged to a particular class; and we perceive no constitutional reason why the legislature may not so provide.

It is said, however, that our cases of *State ex rel. Tacoma R. & P. Co. v. Public Service Comm.*, 101 Wash. 601, 172 Pac. 890, and *Seattle v. Puget Sound T., L. & P. Co.*, 103 Wash. 41, 174 Pac. 464, announce a different doctrine. But we think this mistakes the effect of the cases. The first of the cases, it is true, related to certain provisions of a franchise granted to a street railway company by the city of Tacoma, and these the case held the public service commission had no power to abrogate. But the holding was not rested on the ground that the legislature could not vest in the commission power to abrogate the provisions of the franchise, but, on the contrary, was rested on the ground that it had not done so. The second of the cases but emphasized the first. The same provision of the statute was therein involved that was involved in the first, and the holding of the first case was followed. It may be unnecessary to say that the provision of the statute considered in these cases is not the one under consideration here. The court was there considering the provisions relating to street railways, and the power of the commission as granted in the statute over such companies, as will appear by a comparison of the provisions, is much more restricted than is the power granted with reference to water companies.

In our opinion, the judgment of the trial court is right, and it will stand affirmed.

MAIN, C. J., BRIDGES, and MITCHELL, JJ., concur.