[No. 16803. Department One. March 15, 1922.]

THE STATE OF WASHINGTON, *on the Relation of The City of Spokane, Appellant,* v. E. V. KUYKENDALL, *as Director of Public Works, et al., Respondents.*

THE STATE OF WASHINGTON, *on the Relation of Spokane Falls Gas Light Company et al., Appellant,* v. E. V. KUYKENDALL, *as Director of Public Works, et al., Respondents.*[1]

GAS (3)—CHARGES—PUBLIC SERVICE COMMISSION. It is the policy of the public service law to permit a public utility to receive a fair and reasonable return upon the reasonable value of its property, and the department has the right to order a departure from a franchise contract, which by Laws 1911, p. 561, § 34, is binding until the department has ordered a departure therefrom.

SAME. Under the Public Service Act, Rem. Code, § 8626-92 [Rem. Comp. Stat., § 10441] the physical value of a gas company's property once fixed, is an established base; and at subsequent hearings, the commission must ascertain the betterments, additions and improve-

[1]Reported in 205 Pac. 3.

ments and reproducing costs; but an allowance of cost price is not prejudicial to a company where it is not shown that there has been any advance in the cost of material used in making the betterments.

SAME. The reasonableness of an expenditure incurred in obtaining new business by a gas company is within the regulatory power of the department of public works, and hence part may be disallowed in considering the value of its property for rate making.

Appeals from orders of the superior court for Thurston county, Wright, J., entered August 22, 1921, dismissing proceedings to review an order of the department of public works establishing gas rates. Affirmed.

*J. M. Geraghty* and *Alex M. Winston,* for appellant City of Spokane.

*Graves, Kizer & Graves,* for appellants Spokane Falls Gas Light Company *et al.*

*The Attorney General* and *Raymond W. Clifford, Assistant,* for respondents.

MITCHELL, J.—Two different gas companies are involved in these proceedings, the Spokane Gas & Fuel Company being engaged in the manufacture of gas, and the Spokane Falls Gas Light Company acting as distributor for the product of the first company. Both companies, however, are under one management, so that the two cases will be considered as though the rights of but one company were involved.

In October, 1920, the company filed with the public service commission a revised schedule of rates providing for an increase of the rates theretofore charged. The public service commission suspended the revised schedule and filed its complaint against the company, charging that the rates proposed were excessive. A hearing was had that resulted in the department of public works, which at that time had succeeded to the powers and functions of the public service commission

(Laws of 1921, p. 20[1]), making an order, upon its written findings, disallowing the proposed schedule of rates filed by the company and putting in effect rates which it found to be just, reasonable and sufficient. The rates thus ordered were greater than those theretofore charged, but less than those the company desired to put into effect as suggested in its proposed schedule.

The city of Spokane, which had participated in the hearing, took the cause into the superior court by writ of review, claiming that no increase of the rates should have been allowed, and seeking a cancellation of the order. At the same time the company, by similar proceedings, complained of the order of the department of public works that it did not grant sufficient increase of rates. The hearing in the superior court resulted in the dismissal of the proceedings and an affirmance of the departmental order. The city and the company have appealed.

Until 1913, the company operated under franchises that had been granted by the city to it or its predecessors prior to the going into effect of the public service commission law. During that period its patrons were charged upon the basis of a flat rate, nearly or quite equal to the maximum allowed by the terms of the franchise ordinance. In 1912, something like a year after the effective date of the public service commission law, the city filed a complaint with the commission against both gas companies, alleging that excessive rates for gas were being charged, and praying that the commission cause a hearing to be had and to make an order reducing the rates. Thereupon the commission made a valuation of the properties of the gas companies, as required by the act of 1911 (Laws

[1]NOTE: See Rem. Comp. Stat., § 10784.

of 1911, p. 601), and caused a hearing to be had upon the question of rates as demanded by the city's petition. The result of that hearing was an order entered in May, 1913, fixing a scale of rates graduated according to the amount of gas consumed, beginning with $1.40 per 1,000 cubic feet for the first 2,000 cubic feet (less than theretofore charged on the flat rate basis), and running to $1.00 per 1,000 cubic feet for all over 15,000 cubic feet used per month.

That schedule of rates continued in effect until June, 1918, when, upon a petition of the gas company filed in 1917 for an increase in the rates, an order was entered by the commission granting an increase. Upon these rates the gas company earned an average of 2.53 per cent per annum, down until the time the commission commenced its investigation which ended in the order here complained of. It was the opinion of the department of public works that the schedule of rates established by the present order would yield a return of 7½ per cent per annum upon the properties of the gas company, according to the values placed thereon by the department, and we understand that neither of the appellants seriously questioned that conclusion.

It is the contention of the city on its appeal "that where a franchise is in existence fixing certain maximum rates the department of public works has authority to order a departure by the utility from the terms of the franchise contract, to the extent of permitting the utility to receive sufficient returns to enable it to give efficient service, to maintain its plant in good condition, and to provide for its operating expenses, taxes and depreciation. In no event could it be permitted to charge higher rates than those which would attain this result and permit a small return upon the

investment.'' And it is argued, conceding that, in the absence of any existing franchise contract, the rate schedule put into effect by the order of the commission would be just, fair, reasonable and sufficient, yet, as there is a franchise ordinance in existence, the rates authorized by the commission are not just, fair and reasonable.

Preliminarily, it may be observed that it is difficult to perceive why, if it is permissible for the company to make a small return upon its investment in addition to that necessary to enable it to give efficient service, maintain its plant in good condition, and to provide for its operating expenses, taxes and depreciation, it should not be permitted to make a fair and reasonable return upon its investment in addition to those other things mentioned. If any doubt exists as to the latter being the rule, that doubt may be dispelled, for we are satisfied it is the policy of the statute, which is in harmony with guaranteed rights, that the owner shall receive a fair and reasonable return by way of interest or profit upon the reasonable value of his property used and useful in the public service. By the act of 1911 (Laws of 1911, p. 561, § 34) the terms of a franchise contract like the one in question here are binding upon the parties until the department of public works (heretofore the public service commission) has made an order directing a departure therefrom; and, without question, the department has the right and power to order a departure. *State ex rel. Ellertsen v. Home Tel. & Tel. Co.*, 102 Wash. 196, 172 Pac. 899. In the case of *State ex rel. Webster v. Superior Court*, 67 Wash. 37, 120 Pac. 861, Ann. Cas. 1913D 78, L. R. A. 1915C 287, it was decided that the public service commission law placed the entire subject of rate regulation under the control of the commission, that no contract

between a city representing the public and a public service company would be allowed to interfere with that control, and by way of application of the rule, it was decided in that case to be the duty of the commission to the company to fix a rate which was sufficient (a rate that would afford a fair interest return on the investment), in spite of the franchise contract fixing rates which were too low. That, in legal effect, is what has been done in the present case.

Counsel for the city calls attention to § 34 of the act of 1911, Rem. Code, § 8626-34 [Remington's Compiled Statutes, § 10370], which says that a gas company, among others, shall not be prevented from continuing to furnish its product under any contract in force at the date the act takes effect, or upon the taking effect of any schedule of rates subsequently filed with the commission as provided by the law, at the rates fixed in such contract, provided that the commission shall have power, in its discretion, to direct by order that the contract shall be terminated by the company, and thereupon such contract shall be terminated by such company as and when directed by the order. Therefrom it appears to be argued that the rates provided in the contract should continue until the commission makes an order specifically declaring and directing in so many words that the contract shall be terminated. We may overlook the fact, if need be, that, upon the petition of the city, the rates were reduced in 1913, and that in 1918 they were increased upon the application of the gas company, and consider the franchise contract as having been wholly undisturbed until the present time, and still we would be compelled to determine, as we do determine, that the present order of the department of public works is just as effective as if, after fixing the rates, there had been added therein

the words "and it is hereby directed that the rates provided in the franchise shall be and they are hereby terminated," or words of similar import. That is the legal effect of what was done, and the form or language by which it was accomplished is not very material.

On the contrary, the company, by its appeal, insists that the rates fixed by the departmental order are inadequate and insufficient. The gist of the controversy arises because of divergent views as to the manner of ascertaining the rate base. In the hearing before the department, counsel for the company offered to prove, and insisted they were entitled to show, the reproduction cost new of the present plant of the company, less depreciation upon the depreciable items, and to have a fair return upon that basis. That is to say, they proposed to show that there has been a change in conditions since the 1913 valuation, in that the cost of all commodities has so increased that, if the plant was to be built new at this time, it would cost a great deal more than in 1913, and having proven that and then deducted the depreciation for the long time the property has been in use, the basis would thus be established upon which the rates should be based.

The department rejected the offer and declared, as subsequently stated in its written findings, opinion and order, in effect, that it is contemplated by the law of this state that, when a valuation for rate making purposes has been once made, such valuation shall stand except as modified by plant additions or deductions, as the case may be, unless it later appears that palpable error was committed in making the original valuation; that it has been the policy of the department to permit public utilities to base earnings upon their investment in property used and useful in the public service; that if the investment was improvident or the

management during construction inefficient, so that the original cost was more than it should have been, a value has been fixed for rate-making purposes at a sum which would represent as nearly as possible a prudent investment (which investment does not change); that additions and betterments are accounted for at subsequent hearings at their cost to the utility; that if plant units were actually and necessarily purchased and made at war prices, such cost is added to and becomes a part of the rate base; and that it could not adopt a theory which will require the department to inflate or deflate a rate base in harmony with fluctuating prices.

There is abundance of authority sustaining the view expressed by the appellants in their brief in a quotation from the syllabus in the case of *Willcox v. Consolidated Gas Co.*, 212 U. S. 19, 53 L. Ed. 382, as follows:

"For the purpose of fixing rates, the value of property employed should be determined as of the time when the inquiry is made, and, as a general rule, the corporation is entitled to the benefit of increased value since acquisition."

This theory has been repeated in recent decisions of the United States district courts with some emphasis because of conditions growing out of the world war. *Joplin & P. R. Co. v. Public Service Commission*, 267 Fed. 584; *Consolidated Gas Co. of New York v. Newton*, 267 Fed. 231; *St. Joseph R. Light, Heat & Power Co. v. Public Service Commission*, 268 Fed. 267. As we understand from a reading of those cases, the rate-making bodies were in no way circumscribed or directed by any governing legislative act prescribing the course to be pursued in ascertaining from time to time, after the original or primary valuation, the present value of the property as a base upon which the rates should be fixed.

In this respect the department of public works of this state is not without statutory direction. In the public service commission act of 1911, § 92 (Laws of 1911, p. 601), Rem. Code, § 8626-92 (P. C. § 5619), it is provided, upon the subject of procedure for the valuation of property, as follows:

"The commission shall ascertain, as early as practicable, the cost of construction and equipment, the amount expended in permanent improvements, and proportionate amount of such permanent improvements charged in construction and to operating expenses respectively, the present as compared with the original cost of construction, and the cost of reproducing in its present condition the property of every public service company.

"It shall also ascertain the amount and present market value of the capital stock and funded indebtedness of every public service company. . . .

"It shall also ascertain the total market value of the property of each public service company operating in this state, used for the public convenience within the state.

"It shall also ascertain the time intervening between the expenditure of money in the cost of construction and the time when returns in the shape of dividends were first received by each of these companies.

"It shall also ascertain the probable earning capacity of each public service company under the rates now charged by such companies and the sum required to meet fixed charges and operating expenses, . . .

"It shall also ascertain the density of traffic and of population tributary to every public service company, and the conditions which will tend to show whether such traffic and population is likely to continue, increase or diminish. . . .

"It shall also ascertain whether the expenditures already made by any public service company in procuring its property were such as were justified by the then existing conditions, and such as might reasonably be expected in the immediate future, and whether the money expended by such company has been reasonable

for the present needs of the company, and for such needs as may reasonably be expected in the immediate future.''

Manifestly the legislature had before it in the enactment of this law the leading and exhaustive opinion in the case of *Smyth v. Ames,* 169 U. S. 466, 42 L. Ed. 819, wherein many of the same elements going to make up a rate base are suggested. This same section of the act of 1911 then provides that the commission shall make and enter findings of fact in writing, upon all matters concerning which evidence may have been introduced before it, that shall tend to show the value of the property used by such company for public convenience. The requirements of this law were complied with by the commission as to the properties of the appellant gas company in the year 1913, as has been already mentioned herein. Then for the purpose of all future or subsequent valuations, this same section of the law, in the same mandatory way, provides:

''The commission shall hereafter, from time to time, cause further hearings to be had for the purpose of ascertaining the betterments, improvements, additions and extensions made by any public service company to its property subsequent to the date of any prior hearing, and shall examine into all traffic movement and every matter and thing that would change, modify or affect any finding of fact previously made, and shall at such time make findings of fact supplemental to those theretofore made, showing the amount expended in betterments, improvements, extensions and additions since such prior findings and the cost of reproducing the same, the value of the property used by such company at the time of such subsequent hearing, the relative value of the use to which such property is put in the performance of intrastate and interstate business respectively, and the value of the property of such company in the state used for the public convenience of intrastate business. Such hearing shall

be had upon the same notice, the examination conducted in the same manner, and the findings so made shall have the same force and effect as is provided herein for such original notice, hearing and findings: *Provided,* That such findings made at such supplemental hearing shall be considered in connection with and as a part of the original findings except in so far as such supplemental findings shall change or modify the findings made at the original hearing.'' Laws of 1911, p. 604; Rem. Code, § 8626-92. [Rem. Comp. Stat., § 10441.]

That is to say, concerning the physical property of the company, the commission is directed to ascertain at each subsequent hearing upon rate controversies, the betterments, improvements, additions and extensions made by the public service company since the date of the then last preceding hearing and the cost of reproducing such betterments, improvements, additions and extensions that would change or affect the findings previously made, and supplement those formerly made by such additional findings. Now, in the present case, it cannot be claimed, nor indeed is it claimed, that the allowance by the department of cost price rather than reproduction cost of all betterments made by the appellant since the last appraisal of its property in 1918 was unfavorable to the appellant, since it is not shown there has been any advance during that time in the cost of material used in making the betterments.

This statutory plan of fixing valuations is the one that was employed by the department of public works in arriving at the rate base complained of and which justified the rejection of proof offered by the appellant. Thus it is a fact that the amount fixed by the department is the present value of the properties upon which the rates must be based, as mentioned in the

authorities. The amount may be different from what it would have been had the department followed the course insisted upon by the appellant but it is the only amount that could be fixed by pursuing the course prescribed in the statutes.

Appellant further objects to the disallowance of a portion of the expense it claimed to have incurred in obtaining new business. The amount involved is small and of comparatively little importance. The principle involved, however, is an important one. The contention of the company is that the commission is without power to thus interfere with the legitimate management of the plant of a public utility company. We have no doubt, however, that, since such expenditure is referred to expense account and must therefore be taken into consideration in fixing the rates, it properly falls within the regulatory powers of the department, so that the inquiry is into the reasonableness of the action of the department with reference to it. Upon examination of the record for that purpose, we are not disposed to disturb the finding and conclusion of the department.

The judgments of the superior court are in all respects affirmed.

PARKER, C. J., FULLERTON, TOLMAN, and BRIDGES, JJ., concur.