[No. 21062.  *En Banc.*  July 19, 1928.]

COLUMBIA RIVER TELEPHONE COMPANY, *Appellant,* v.
DEPARTMENT OF PUBLIC WORKS, *Respondent.*[1]

[1] TELEGRAPHS AND TELEPHONES (5)—REGULATION OF RATES—VALU-
ATIONS BY DEPARTMENT—GOING CONCERN VALUE.  Under Rem.
Comp. Stat., § 10441, providing for hearings to determine the
value of the property of public service companies as evidence
for future rate making, and specifying in detail the elements
of value to be considered, value of the property as a going
concern or good will, not mentioned in the act, is not to be con-
sidered.

[2] CONSTITUTIONAL LAW (134)—DUE PROCESS OF LAW—REGULATION
OF TRADE OR BUSINESS.  A valuation order under Rem. Comp.
Stat. § 10441, fixing the value of public service property with-
out considering "going concern" value, does not violate the due
process clause of the constitution, even if the values fixed
should ultimately control in a rate making proceeding.

Appeal from a judgment of the superior court for
Yakima county, Hawkins, J., entered October 8, 1927,
affirming an order of the department of public works
fixing the valuation of telephone property.  Affirmed.

*Cleland & Clifford,* for appellant.

*The Attorney General* and *H. C. Brodie, Assistant,*
for respondent.

PARKER, J.—The appellant telephone company seeks
in this court reversal of a judgment of the superior
court for Yakima county affirming an order of the state
department of public works finding and fixing the value
of appellant's public service property; appellant con-
tending that, in so far as the department refused to
consider and add to the valuation of its property a
substantial amount based upon so-called going concern
value, its order is erroneous and prejudicial to appel-
lant.

[1]Reported in 269 Pac. 6.

The department refused to consider going concern value as an element in the value of appellant's public service property, manifestly because of the department's view of the provisions of Rem. Comp. Stat., § 10441 [P. C. § 5619], under which it was proceeding in making the valuation. That section, in so far as we need here notice its language, reads as follows:

"The commission [now the department of public works] shall ascertain, as early as practicable, the cost of construction and equipment, the amount expended in permanent improvements, and proportionate amount of such permanent improvements charged in construction and to operating expenses respectively, the present as compared with the original cost of construction, and the cost of reproducing in its present condition the property of every public service company.

"It shall also ascertain the amount and present market value of the capital stock and funded indebtedness of every public service company.

"It shall also ascertain the total market value of the property of each public service company operating in this state used for the public convenience within the state.

"It shall also ascertain the probable earning capacity of each public service company under the rates now charged by such companies and the sum required to meet fixed charges and operating expenses, . . .

"It shall also ascertain the density of traffic and of population tributary to every public service company, and the conditions which will tend to show whether such traffic and population is likely to continue, increase or diminish.

.    .    .    .    .    .    .    .    .    .

"It shall also ascertain whether the expenditures already made by any public service company in procuring its property were such as were justified by the then existing conditions, and such as might reasonably be expected in the immediate future and whether the money expended by such company has been reasonable for the present needs of the company and for such

needs as may reasonably be expected in the immediate future.

"The commission is hereby authorized to cause a hearing or hearings to be held at such time or times and place or places as the commission may designate for the purpose of ascertaining the matters and things provided for in this section.

"The commission shall, before any hearing is had, notify the company concerned of the time and place of such hearing, by giving at least thirty days' written notice thereof, specifying that at the time and place designated a hearing will be held for the purpose of ascertaining the value of such company's property within the state, which shall be a sufficient complaint to authorize the commission to inquire into the matters designated in this section.

"All companies affected shall be entitled to be heard and introduce evidence at such hearing. The evidence introduced at such hearing shall be reduced to writing and certified under the seal of the commission.

"The commission shall make and render findings of fact in writing covering all matters in this section mentioned concerning which it is directed to inquire into, and shall make findings upon all matters concerning which evidence may have been introduced before it shall tend to show the value of the property used by such company for the public convenience."

That section further provides for a review in the superior court of the department's findings and fixing of value, and correction thereof by that court, if found by the court to be "unfair, unwarranted or unjust," and for appeal from the decision of the superior court thereon to this court; and further provides that the findings of the department, or as they may be finally by the courts corrected or directed to be corrected,

". . . shall be conclusive evidence of the facts stated in such findings as of the date therein stated under conditions then existing, . . . and such facts can only be controverted by showing a subsequent change in conditions bearing upon the facts therein determined;"

and further provides that the department shall

". . . from time to time cause further hearings to be had for the purpose of ascertaining the betterments, improvements, additions and extensions made by any public service company to its property subsequent to the date of any prior hearing."

This is not a rate fixing proceeding, though its final determination may furnish evidence pertinent to some future inquiry looking to the change of appellant's present established rates charged and collected by it. It is manifestly because the final determination of this proceeding will be evidence of the value of appellant's public service property, as of the date of the valuation so made, that appellant seeks to have now included therein a substantial amount as going concern value.

[1] It will be noticed that Rem. Comp. Stat., § 10441, specifies in considerable detail the elements of value of public service property to be considered and determined by the hearing therein contemplated. It does not specify going concern or good will value as an element to be so considered. The department concededly proceeded accordingly, ignoring going concern value as an element to be included in its determination. Following recitals and findings touching these several statutory specified matters of inquiry, the department made its final order as follows:

"ORDER

"From the foregoing Findings of Fact, the Department concludes, and its order is:

"1. That the fair value for rate making purposes of the respondent's property as of December 31, 1925, exclusive of working capital, is $50,603.66.

"2. That a reasonable allowance for working capital as of December 31, 1925, is $2,300.00."

No contention is here made that this determination by the department is "unfair, unwarranted or unjust," other than that the department erroneously excluded consideration of going concern value. It seems to us

that our unanimous *En Banc* decision in *Pacific Coast Elevator Co. v. Dept. of Public Works*, 130 Wash. 620, 228 Pac. 1022, is decisive against appellant's contentions here made. While that was a rate fixing proceeding, the valuation of the public service property there drawn in question was determined by the department in the manner prescribed by the statute above quoted, and excluded consideration of going concern value. Holding, in view of that statute, this to be a lawful method of so measuring the value of the public service property there in question for rate making purposes, Judge Fullerton, speaking for the court, said:

"The first of the questions in controversy is whether the department, in ascertaining the values of the several properties involved, on which it based its schedule of permissible charges, pursued a proper method of valuation. The method adopted by the department is what is commonly termed the prudent investment method. The department ascertained the sums of money prudently invested by the owners in the properties, and, using the sums so found as a rate base, formulated a schedule of charges which, based on the normal amount of business transacted, would yield to the owner a sum slightly in excess of ten per centum on the investment. The method pursued by the department was the method which we approved in *State ex rel. Spokane v. Kuykendall*, 119 Wash. 107, 205 Pac. 3. We there pointed out that this was not only the method of ascertaining the value of property for rate making purposes uniformly pursued by the department in its former practices, but was the method required by the statute under which the department derived its powers.

"The appellant contends, however, that this method of valuation violates the fourteenth amendment to the constitution of the United States; that the rule under that amendment requires that property be valued for rate-making purposes as of the time when the inquiry is made, and must be taken at its then market value as a going concern. A number of cases are cited from the supreme court of the United States as maintaining the

rule, three of which, namely, *Southwestern Bell Tel. Co. v. Public Service Comm.*, 262 U. S. 276; *Georgia R. & P. Co. v. Railroad Comm.*, 262 U. S. 625; and *Bluefield Water Wks. & Imp. Co. v. Public Service Comm., etc.*, 262 U. S. 679, were determined since the determination of our case of *State ex rel. Spokane v. Kuykendall, supra.* There is, however, a distinction between the cited cases and our own case. In the cited cases the statutes governing the regulatory bodies did not prescribe the rules by which the property of the utilities under consideration was to be valued and the regulatory bodies and the courts were left free to adopt such a rule of valuation as would best accord with the justice of the case. In this state, as we have shown, the statute has not left the department or the courts free in this respect. It has in itself prescribed the rule. Whether this difference will be regarded by the authoritative court as a sufficient justification for the rule so adopted remains yet for determination. But until it is so determined we feel constrained to follow the statute.''

We see no reason for here holding that decision as not controlling in this case because of the fact that this is a valuation case and that was a rate case, as counsel for appellant suggests we should. Indeed, it seems that there would be more reason for including going concern value in the valuation of public service property in a rate case, where the final determination actually fixes rates, than in a simple valuation case, as this is, where the final determination does not fix rates, but only becomes evidence which may be used in some future rate proceeding.

[2] It is contended in behalf of appellant that the findings and order of the department

''. . . constitutes a deprivation of the property of appellant without due process of law in contravention of the Federal constitution, Art. 14, § 1, and the state constitution, Art. 1, § 3.''

There was some evidence presented to the department upon the hearing, in the form of opinion testimony, to the effect that the valuation of appellant's public service property should be augmented by an item of ten thousand dollars as going concern value. The *Attorney General* did not offer any evidence touching going concern value, resting upon the theory, as the department in effect ruled, that going concern value had no place in the inquiry. It is difficult for us to see how the valuation placed upon the public service property of appellant by the department in this proceeding has the effect of depriving appellant of its property without due process of law, in violation of constitutional guaranties, since the findings and order do not compel any reduction in, or fix, the service rates chargeable by appellant. No one has asked for, nor has the department made or threatened to make, any change in the present fixed service rates charged and collected by appellant. However, even though the findings and order of the department should be considered as having the far reaching effect of ultimately controlling the department's fixing of appellant's rates, the above quotation from our decision in *Pacific Coast Elevator Co. v. Dept. of Public Works, supra,* seems to us decisive against this constitutional contention made in behalf of appellant.

We conclude that the valuation order of the department and the judgment of the superior court affirming that order must be affirmed. It is so ordered.

All concur.