[No. 25736. Department One. January 15, 1936.]

THE STATE OF WASHINGTON, *on the Relation of the Standard Oil Company of California, Appellant*, v. THE DEPARTMENT OF PUBLIC WORKS *et al., Respondents.*[1]

*Battle, Hulbert, Helsell & Bettens,* for appellant.

*A. C. Spencer, Robert S. Macfarlane, O. G. Edwards, Carey, Hart, Spencer & McCulloch, Thomas Balmer,* and *A. J. Clynch,* for respondents.

*Eggerman & Rosling* and *W. S. Greathouse,* for Associated Oil Co., *amicus curiae.*

GERAGHTY, J.—The appellant, on November 27, 1933, filed with the department of public works its complaint, alleging that, between November 24, 1931, and March 24, 1932, it made numerous shipments of petro-

[1]Reported in 53 P. (2d) 318.

leum products from Richmond Beach, in the state of Washington, to various other points in the state on the defendants' railway lines; that the rates demanded and collected by the defendants upon these shipments were unreasonable and unjust *per se,* and particularly so to the extent that they exceeded the rates and charges that would have been collected had a schedule been in force, based upon the Mountain-Pacific oil cases scale prescribed by the Interstate Commerce Commission for interstate shipments (I. C. C. Docket No. 23508).

The rates collected by the respondent carriers, against which the complaint was directed, were the published and established rates on file with the department at the time of collection. The prayer of the complaint was for an order commanding the defendants to pay, by way of reparation for the unlawful charges alleged, a sum equal to the difference between the amount of the freight charges collected and that which would have been collected if rates based upon the so-called Mountain-Pacific interstate rates had been in force.

The respondents appeared in the proceeding before the department and moved to dismiss the complaint, for the reason that the reparation sought arose out of shipments made prior to the date upon which the complaint was filed; and that, therefore, the department was without jurisdiction or power to award reparation. The motion was granted by the department and the complaint dismissed. Thereupon, the appellant sued out a writ of review to the superior court of Thurston county, where a judgment was rendered sustaining the order of dismissal made by the department. This appeal is from that judgment.

The appellant assigns as error (a) the dismissal of its complaint by the department of public works upon

the assigned reason of lack of jurisdiction to entertain the complaint; and (b) the affirmance of the department's order by judgment of the superior court. The question at issue is whether the department of public works possesses the power under the applicable statutes to require the respondent railway carriers to pay to the appellant, as reparation or damages, part of the charges collected prior to the filing of the complaint, under tariff schedules in effect at the time of collection.

The respondents contend, and the department of public works and the superior court adopted the view, that, under our statutes, relief sought as against an effective tariff schedule by way of reparation can be awarded only for the period subsequent to the filing of the complaint with the department.

The contention of the appellant is based upon the theory, finding support in the decisions of several of the states, as well as the Federal courts, that there is a distinction between a legal rate and a lawful rate; that where, in order to render rates definite and certain and to prevent discrimination and other abuses, the statute requires the filing and publishing of tariffs specifying the rates adopted by the carrier, these become the legal rates, which must be charged to all shippers alike; but that, while a legal rate is thus created, it is not necessarily a lawful rate—it is lawful only if it is reasonable. This line of authority holds that a tariff rate filed by the carrier under the statute, while legal, becomes conclusively lawful only after its reasonableness has been determined by the regulatory authority; and if the filed rate, although legal in the sense that its collection is obligatory on the carrier and shipper alike, is thereafter found to be unreasonable, the person damaged by its exaction is entitled to reparation. *Arizona Grocery Co. v. A. T. & S. F. R. Co.,* 284 U. S. 370; *Bonfils v. Public Utilities Commission,*

67 Colo. 563, 189 Pac. 775. Of course, the decisions of the courts holding this view are based on the statutes applicable in their jurisdictions.

This court, in its construction of our statutes relating to the subject matter, has reached a different conclusion. The difference between a legal and a lawful rate is not recognized, but, on the contrary, the rates specified in the schedules filed and in effect are held to be the only lawful rates and remain such so long as they are effective.

The appellant argues that to deny recovery as against an allegedly unreasonable rate prior to the date of filing a complaint with the department, is in effect the denial of a common law right and leaves a wrong without a remedy. But our statute requires that all rates be reasonable and, to insure this, prescribes that they be filed and published with the regulatory authority for a named period before their effective date, so that everyone concerned may have notice with an opportunity to challenge them; and the department of public works may, upon its own motion, suspend them pending investigation. They are also subject to challenge after their effective date by anyone affected. So long as they remain effective and unchallenged, they are presumed to be reasonable.

The question is set at rest by *Puget Sound Navigation Co. v. Department of Public Works,* 157 Wash. 557, 289 Pac. 1006, where we said:

"Under the statute law, all carriers are mandatorily required to charge rates and fares 'as specified in its schedule filed and in effect at the time,' and are prohibited from charging or collecting other or different rates. Rem. Comp. Stat., §§ 10350, 10351, 10434, 10435. Without further analysis, we think that the statute law, when read and considered as a whole, leads to the view, and we must now hold, that, when a rate is filed, published and permitted to become effective by the de-

partment, it is and remains, until challenged in the manner provided by statute, the lawful rate, and the only lawful rate, to be charged and collected. Otherwise, the carrier would never know what its lawful earnings were, and could never allocate its earnings to betterments and dividends without the possibility of being embarrassed by delayed orders to make restitution. It cannot be the legislative intent that its only protection in that respect is the two-year limitation contained in the statute. Therefore, when a scheduled rate is challenged, that challenge should affect the scheduled rate only from the date of the filing of the complaint. *Pacific Coast Elevator Co. v. Department of Public Works,* 130 Wash. 620, 228 Pac. 1022; *Northern Pacific Railway Co. v. Department of Public Works,* 136 Wash. 389, 240 Pac. 362.''

In announcing this rule, the court had in mind all applicable provisions of the statute, and while Rem. Rev. Stat., § 10433 [P. C. § 5618], was not specifically referred to, it is not to be implied that a different rule would result in the construction of that section. The section was embodied in the original public service commission law (chapter 117, Laws of 1911, p. 538). Rem. Rev. Stat., §§ 10434-10439, inclusive, were enacted by the 1921 legislature as chapter 110, Laws of 1921, p. 336, and covered substantially the same matter as § 10433, with the addition of a more detailed method of procedure. Even if § 10433 is to be considered as affording a measure of relief distinct from the other cited sections, the broad principle announced in the *Puget Sound Navigation Co.* case, that rates cannot be given effect retroactively beyond the date of filing the complaint, would be controlling. Whatever may be its form, a claim for reparation for overcharge as against a rate, lawful at the time of collection, seeks in effect the giving of retroactive force to a rate schedule, and this we have held the department cannot do beyond the date of the filing of the complaint challenging the rate.

In *Pacific Coast Elevator Co. v. Department of Public Works*, 130 Wash. 620, 228 Pac. 1022, we quoted with approval from *Boston & Worcester R. Corp. v. Western R. Corp.*, 14 Gray (Mass.) 253, as follows:

"It is however further objected by the Western Railroad Corporation, that the commissioners exceeded their powers in determining that their award should relate back to the first day of June, 1856, being the date of the expiration of a former contract between the parties. This objection must be sustained. Their determination could only take effect from and after the time of the filing of the petition of the Western Railroad Corporation. So much, therefore, of the award as relates to the rights, duties and obligations of the parties anterior to the commencement of proceedings, by the filing of that petition, must be set aside and rejected. This in no way affects the award in any other respect; and the order therefore must be that, with that exception, it is accepted, affirmed and established, and that judgment to this effect be entered of record."

The 1933 legislature enacted chapter 148, p. 521, Rem. 1935 Sup., § 10433 [P. C. § 5618], which amended Rem. Rev. Stat., § 10433, and repealed §§ 10434 to 10439, inclusive, the whole matter of overcharges being covered by the amendment. The manifest purpose of this act was procedural. It created no new substantive right. If it did, it could not be given retroactive effect so as to affect vested rights. That it was procedural is evidenced by its title as well as by the language employed in the body of the act.

The judgment is affirmed.

MITCHELL, BLAKE, TOLMAN, and STEINERT, JJ., concur.